IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| PATRICK D. FREEMAN, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No.  SA-14-CV-255-XR |
| § | |
| CAROLYN W. COLVIN, Acting § | |
| Commissioner of the Social Security § | |
| Administration, § | |
| § | |
| *Defendant.* § | |
| § | |

**ORDER**

On this day the Court considered the Reports and Recommendations ("RNRs") by Magistrate Judge Mathy (docket nos. 12 and 18), and Plaintiff's objections to the second RNR (docket no. 22). After careful consideration, the Court adopts the Magistrate Judge's recommendations to deny default judgment and to affirm the Defendant's denial of disability benefits to the Plaintiff.

**I.   Introduction**

Plaintiff Patrick Freeman seeks review and reversal of the administrative denial of his application for Disability Insurance Benefits ("DIB") by Administrative Law Judge Charles Brower (the "ALJ"). Freeman contends that the ALJ made errors of law that require the Court to reverse the decision of Defendant Social Security Administration ("SSA") Commissioner Carolyn Colvin (the "Commissioner"), denying him benefits. Freeman asks the Court to reverse the decision and render judgment in his favor, or alternatively, remand the case for

additional administrative proceedings. This Court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. § 405(g).

## II.     Procedural Background

Freeman filed an application for DIB on September 20, 2012, alleging disability beginning on February 1, 2012.  The SSA denied DIB on January 15, 2013, and again upon reconsideration on January 28, 2013.  Freeman then asked for a hearing.  A hearing was held before ALJ Brower on August 6, 2013.  Freeman was represented by an attorney at the hearing. At the hearing, he amended the alleged onset date of disability from February 1, 2012 to March 31, 2012.  Docket no. 6, ex. 2 at 30–31.  The ALJ issued a decision on November 19, 2013, denying benefits and concluding that Freeman is not disabled within the meaning of the Social Security Act ("the Act").  The SSA Appeals Council later concluded there was no basis for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  Freeman fully exhausted his administrative remedies prior to filing this action in federal court.

The original complaint was filed in this Court on March 21, 2014.  The case was referred to Magistrate Judge Mathy.  The Commissioner was served on April 3, 2014, and filed an answer on May 21, 2014.  Docket nos. 3 and 4.  Freeman moved for default judgment (docket no. 8), which Magistrate Judge Mathy denied because the Answer was timely filed and the Clerk had not entered default.  Freeman then moved for reconsideration of default judgment (docket no. 9), which Magistrate Judge Mathy also denied.  Upon Freeman filing another objection on the default judgment issue, Magistrate Judge Mathy issued her RNR on

the motion for default judgment.  Docket no. 12.  Freeman did not file an objection to the default judgment RNR.

Freeman filed his brief in support of his appeal of the Commissioner's decision on July 21, 2014.  Docket no. 15.  The Commissioner filed her brief on August 11, 2014.  Docket no. 17.  On September 4, 2014, Magistrate Judge Mathy issued her second RNR, this one on the merits, which recommended this Court (1) deny Freeman's requests for a ruling modifying the decision of the Commissioner, (2) affirm the decision of the Commissioner, and (3) enter judgment for the Commissioner against Freeman, each side to bear its own costs.  *See* docket no. 18.  Freeman timely filed objections to the RNR on September 19, 2014.  *See* docket no. 22.

### III.   Applicable Legal Standards

#### A.   *Standard of Review*

Where no party has objected to a Magistrate Judge's report and recommendation, a court need not conduct a *de novo* review.  *See* 28 U.S.C. § 636(b)(1).  In such cases, the court only reviews the recommendation to determine whether it is clearly erroneous or contrary to law.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).  Similarly, when a party makes no specific objection to a portion of a report, a court only reviews that portion for clear error.  *See id.*  Additionally, failure to file timely written objections to a Magistrate Judge's report bars the aggrieved party, except upon grounds of plain error, from attacking the proposed findings and legal conclusions accepted by a district court on appeal.  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000); *Douglass v. United Serv. Auto, Ass'n.*, 79 F.3d 1415, 1428 (5th Cir. 1996).

Where a Magistrate Judge's report and recommendation has been objected to, the district court reviews the recommendation *de novo* pursuant to Federal Rule of Civil Procedure 72. *See also* 28 U.S.C § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). During a *de novo* review a court examines the entire record and makes an independent assessment of the law. However, the court should not conduct a *de novo* review when the objections are frivolous, conclusive, or too general. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

The reviewing court must affirm the Commissioner's determination unless the court finds that (1) the ALJ applied an incorrect legal standard, or (2) that the ALJ's determination is not supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the

evidence or substituting its judgment for the Commissioner's. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 ("The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner."). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez*, 64 F.3d at 174.

Four elements of proof are weighed by the reviewing court in determining if substantial evidence supports the ALJ's determination of non-disability: 1) objective medical facts, 2) diagnoses and opinions of treating and examining physicians, 3) the claimant's subjective evidence of pain and disability, and 4) the claimant's age, education, and work experience. *Id.*

## B. Entitlement to Benefits

Every individual who is insured for disability benefits is eligible to receive DIB from the SSA if he: 1) has not reached retirement age, 2) meets certain income and resource requirements, 3) has filed an application for benefits, and 4) has a disability. 42 U.S.C § 423(a)(1). The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C § 1382c(a)(3)(A). A claimant

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

> immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C § 1382c(a)(3)(B).

### C. *Evaluation Process and Burden of Proof*

SSA regulations require disability claims to be evaluated by a five-step process. 20 C.F.R. §§ 404.1520 and 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The five-step inquiry laid out in 20 C.F.R. §§ 404.1520 and 416.920 requires the ALJ: 1) determine whether the claimant is currently engaged in substantial gainful activity;[1] 2) determine whether the claimant's impairment is severe;[2] 3) compare the severe impairment with those on a list of specific impairments to determine if the impairment meets or equals a listed impairment; 4) determine whether the impairment prevents the claimant from performing the demands of his past relevant work;[3] 5) evaluate the claimant's ability, given his residual functional capacity ("RFC") and his age, education, and work experience, to do other work.[4] If the impairment found at step three is not on the SSA's list of severe specific impairments, the Commissioner is to review and analyze the claimant's RFC before moving to step four and five.

The claimant bears the burden of proof at the first four steps of the sequential analysis. *Leggett*, 67 F.3d 564. Once the claimant has shown that he is unable to perform his previous

---

[1] If so, the claimant will be found not disabled regardless of his medical condition or his age, education, and work experience.
[2] If it is not severe, the claimant is deemed not disabled.
[3] If he can still do his past work, then he is not disabled.
[4] If the claimant cannot do other work, he will be found to be disabled.

work, the burden shifts to the Commissioner to show other that there is substantial gainful employment available that the claimant is physically able to perform. The Commissioner must also account for the claimant's exertional and nonexertional limitations. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989).

## IV.   Analysis

### A. *Default Judgment and Motion for Reconsideration*

Plaintiff has not filed objections to the Magistrate's first RNR (docket no. 12) on the motion for default judgment (docket no. 8) and motion for reconsideration (docket no. 9). Therefore, the Court reviews the recommendation for clear error.

The Court has reviewed the RNR on the motion for default judgment and motion for reconsideration and finds that it is neither clearly erroneous nor contrary to law. *See Wilson,* 864 F.2d at 1221. Accordingly, the Court accepts the Magistrate Judge's recommendation and denies Plaintiff's motion for default judgment and motion for reconsideration.

### B. *Findings and Conclusions of the ALJ on the Merits*

ALJ Brower held a hearing on August 6, 2013. Freeman appeared and testified, as did Robert Grant, an impartial vocational expert. *See* docket no. 6, ex. 2 at 25. The ALJ issued his written opinion on November 19, 2013, denying benefits and finding that Freeman was not disabled. *Id*. at 18.

The ALJ followed the five-step analysis required by the Commissioner. At the first step, the ALJ found that Freeman had not engaged in substantial gainful activity since the alleged onset date of March 31, 2012. *Id*. at 13. At the second and third steps, the ALJ determined that Freeman's alleged disability due to degenerative disc disease in his lower back, gastritis, and loss of feeling in his hands and feet, was non-severe based on the objective medical evidence despite Freeman's subjective complaints of pain and disability. *See id*. at 14. Additionally, the ALJ found Freeman's obesity, depression and anxiety, in combination, are severe, but that these impairments do not, either singly or in combination, meet or equal a listed impairment in 20 C.F.R. § 1520(d). *See id*. at 13–14.

The ALJ then assessed Freeman's RFC because he had determined that Freeman suffered from severe impairments that did not meet or equal a listed impairment. *See id*. at 15. The ALJ found that Freeman's subjective complaints of disabling symptoms and limitations were "not entirely credible" because they were not consistent with the objective medical evidence or other evidence found in the record. *Id*. at 16. He determined that Freeman retains the RFC to do medium work, subject to certain nonexertional limitations. *Id*. at 14–17.

At step four and five of the evaluation process, the ALJ assessed the demands of Freeman's past work and his capability of performing other work in the national and regional economy. *See id*. at 17. The ALJ found that Plaintiff was unable to perform his past relevant work "as a project manager/site supervisor, as a help desk representative, and as a member of an honor guard and drill team," at step 4. At step five, the ALJ utilized the vocational expert's testimony to conclude that a person of Freeman's age, education, work experience, and RFC could work in the national economy as a furniture stripper. *See id*. at 17.

### C. *Judge Mathy's Recommendations*

On appeal to this Court, Freeman raised seven objections to the ALJ's decision, which Magistrate Judge Mathy summarized into four arguments: (1) whether the ALJ failed to consider the vocational expert's testimony and failed to allow Freeman to cross-examine the vocational expert; (2) whether the ALJ improperly weighed the opinions of Freeman's treating physicians and failed to consider the combination of his impairments; (3) whether the ALJ erred by discounting Freeman's subjective statements of symptoms and experience of pain; and (4) whether the ALJ's RFC is supported by substantial evidence. *See* docket no. 18 at 15–23.

Magistrate Judge Mathy recommended that the Commissioner's decision to deny DIB to Freeman be affirmed by finding that the ALJ did not commit reversible error and the ALJ's decision is supported by substantial evidence. *See id*. at 23–24.

### D. *Freeman's Objections to* Magistrate *Judge Mathy's Recommendations*

Freeman objects to Magistrate Judge Mathy's recommendation to affirm the ALJ's step-five determination, contending that the finding that he could work as a furniture stripper was not based on substantial evidence. *See* docket no. 22 at 3–5. In particular, Freeman argues that the ALJ erred by: (1) not incorporating all his limitations into the hypothetical question presented to the vocational expert by finding that "[his] RFC was only established by [his] mental impairments, not [his] physical [impairments]," *see id*. at 4; and (2) discounting his complaints, and prior diagnosis, of loss of feeling in his hands and feet, since substantial medical evidence existed to support that physical problem, *see id*. at 5. Freeman also submits new evidence to support his objections in this appeal. *See id*.

The Court reviews all the portions of the second RNR to which Freeman objects *de novo*. The Court has also reviewed the other portions of the RNR and finds they are not clearly erroneous or contrary to law. *See Wilson,* 864 F.2d at 1221.

### 1. *Hypothetical Question to the Vocational Expert*

A vocational expert testifies because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). In social security cases, the ALJ often poses "hypothetical questions" to the vocational expert to inform the ALJ's ultimate finding on the claimant's disability. *See, e.g.*, *Carey v. Apfel*, 230 F.3d 131, 140 (5th Cir. 2000). For example, in *Carey*, the ALJ asked the vocational expert if a person could participate in the national economy if that person could "sit, stand, and walk for six hours and stoop or bend for up to one-third of the day, who was able to work with only one, dominant arm, who could not climb, and who would need to work in a climate controlled environment." *Id.* "The vocational expert then testified that such a person would not be able to perform [plaintiff]'s past relevant work, but that such a person would retain the residual functional capacity to perform certain light, unskilled, and available jobs such as usher, cashier, or ticket seller." *Id.*

A hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's RFC assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.* The ALJ is not required to incorporate limitations into the hypothetical questions

presented to the vocational expert that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Here, the ALJ determined that Freeman had the RFC to perform medium work, subject to certain nonexertional limitations. *See* docket no. 6, ex. 2 at 15. During the hearing, it came to light that the record contained no physical RFC assessment from a state agency physician, although it contained mental RFC assessments. *Id*. at 42–43. The ALJ then asked the vocational expert to consider the following hypothetical:

> [A]ssume a person of Mr. Freeman's age, education and work history. Assume further, this person can do medium work. Assume further that our hypothetical person can understand, remember and carry out detailed, noncomplex instructions and can maintain attention and concentration for extended periods, can [use] just judgment to make decisions, can respond appropriately to supervision of co-workers and can deal with changes in a routine work setting. Can such a person do any of Mr. Freeman's past relevant work?

*Id*. at 43–44.

Based on this hypothetical, the vocational expert testified that Freeman was not capable of performing his past relevant work. However, the vocational expert stated Freeman, or a hypothetical person in his circumstances, was capable of working as a furniture stripper. *Id*. at 42-44. Subsequently, the ALJ asked, "On the other hand, our hypothetical person suffers from loss of feeling in hands and feet . . . as well as gastritis, requiring bathroom trips 10 times a day. Could such a person work in the national economy?" *Id* at 43. The vocational expert testified that based on those physical impairments, loss of feeling in hands and feet and gastritis, the hypothetical person would not be able to work as a furniture stripper. *Id*. at 43.

The ALJ discounted the vocational expert's answer to the second hypothetical question because, when assessing Freeman's physical RFC, the ALJ found that Freeman's alleged

symptoms like loss of feeling in the hands and feet, and gastritis, were inconsistent with the objective medical evidence found in the record. *See id*. at 14-16. The ALJ followed the SSA regulations' two-step process for evaluating symptoms. First, an ALJ must determine if a claimant has a medical issue that could reasonably be expected to produce the alleged symptoms. 20 C.F.R § 404.1529(b). Second, if the claimant passes the first step, the ALJ looks at the "intensity and persistence" of the alleged symptoms to help inform the claimant's capacity to work based upon all the evidence in the record, including the objective medical evidence and the claimant's testimony. § 1529(c). Symptoms only impact the ALJ's work-capacity determination if they are reasonably consistent with the medical evidence and all other evidence in the record. *Id*.

Here, the ALJ found that, "although [Freeman]'s impairments could reasonably be expected to cause some of the alleged symptoms, his statements about the intensity and persistence of the symptoms and the extent to which the symptoms limit his capacity for work are not entirely credible because they are not consistent with the objective medical evidence and other evidence of record." Docket no. 6, ex. 2 at 15. Specifically, he found that "the medical evidence of record [did] not support [Freeman]'s allegation of disabling loss of feeling in hands and feet." The record had no evidence that Freeman sought any treatment for loss of feelings in hands or feet, and Freeman's lawyer conceded that Freeman complained of the symptoms in 2010, and never sought any treatment or further testing suggested by the doctor. *Id*. The ALJ also found the medical evidence did "not support [Freeman]'s allegation of disabling gastritis requiring bathroom breaks ten times per day." *Id*. Freeman again never sought treatment for the condition in the relevant timeframe. The ALJ noted the gastritis

12

would not "rise to the level of a medically determinable impairment, given the absence of a diagnosis from an acceptable medical source." *Id.*  The ALJ went on to find that Freeman's daily activities showed he was not suffering disabling physical symptoms, and that Freeman's testimony failed to support his alleged physical symptoms because "he could not readily tell [the ALJ] why he thought he was disabled . . . the result of his lack of conviction that he is really disabled." *Id*. at 16.  Finally, the ALJ stated his conclusion on the physical symptoms was correct because none of the medical evidence and sources mentioned Freeman had any functional limitation from his physical symptoms. *Id*.

Freeman argues that the ALJ found in his RFC determination that Freeman was limited to jobs that involved medium work, subject to certain nonexertional limitations, but that the ALJ erred by failing to include his physical limitation in the hypothetical question to the vocational expert. *See* docket no. 22 at 4.  Because the vocational expert answered Freeman could not work as a furniture stripper in the hypothetical question that included the loss of feeling and gastritis, it might be error if the ALJ improperly relied on the hypothetical question without the physical limitations, if the physical limitations needed to be included in the hypothetical question upon which the ALJ ultimately relied.

Here, although at the time of the hearing the record did not contain a state agency reviewing physician physical RFC assessment, the ALJ's first hypothetical questions fairly set out all of Freeman's recognized impairments and insured that the vocational expert knew what Freeman's abilities and limitations were. *See Garza v. Astrue*, No. SA-08-CV-789-XR, 2010 WL 918348 *4 (W.D. Tex. Mar. 11, 2010) (holding that a hypothetical question posed to a vocational expert must incorporate reasonably all disabilities of the claimant recognized by

the ALJ, and the claimant or her representative must be afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question.). The ALJ did not need to include the physical symptoms because he did not find they were supported by the evidence in the record.

Therefore, the Court finds there is substantial evidence to support the ALJ's conclusion. The ALJ did not err when only following the vocational expert's testimony based on Freeman's mental limitations because the ALJ did not find Freeman's alleged physical limitations to be supported in the record, so the ALJ did not need to follow the vocational expert's answer to the hypothetical question that included the alleged physical impairments. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (holding that a hypothetical question based on all disabilities recognized by the ALJ is a proper basis to make a determination of non-disability).

To rely on the vocational expert's answer to the hypothetical question, the ALJ must give the claimant an opportunity to correct any alleged deficiencies in the questions. *Bowling,* 36 F.3d at 436. If a claimant fails to correct a defective hypothetical question, the ALJ cannot automatically rely on that hypothetical as a proper basis of non-disability. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). Here, Freeman had an opportunity to correct the deficiencies in the hypothetical question posed to the vocational expert and his counsel at the hearing. *See* docket no. 6, ex. 2 at 43. Freeman argues that the facts were not fully developed because the ALJ relied upon the defective hypothetical as the basis for determining that Freeman is not disabled under the Act.[5] This is unpersuasive. The Court finds Freeman's

---

[5] Freeman cites *Boyd v. Apfel*, 239 F.3d 698, 706–07 (5th Cir. 2001) (quoting *Bowling* 36 F.3d at 436). *See* docket no. 22 at 4. "Unless the hypothetical question posed to the [vocational expert] by [the] ALJ can be said to

attorney had a fair opportunity to correct any theoretical deficiencies in the hypothetical and that Freeman's attorney declined to ask any questions. *See id*. at 12; docket no. 6, ex. 2 at 44.

Lastly, the ALJ did not rely on the hypothetical alone to determine that Freeman was not disabled. The record shows that the ALJ considered the medical evidence from the alleged onset date through May 13, 2013. *See* docket no. 6, ex. 2 at 13–18. Additionally, the vocational expert heard Freeman's testimony about his ailments before the vocational expert testified that he could not do his past relevant work, but could perform other work in the national economy. *See id*. at 44. Therefore, the Court finds that the ALJ's determination of non-disability is supported by substantial evidence because: 1) the hypothetical question was proper; 2) Freeman had an opportunity to object and correct any deficiencies he saw in the hypothetical question at the time it was posed; and 3) the ALJ did not rely solely on the hypothetical question to reach his conclusion of non-disability and that Freeman could perform work in the national economy, such as a furniture stripper. The ALJ did not find that Freeman had a loss of feeling in hands or feet, or gastritis requiring bathroom breaks, based on all the evidence in the record, and thus was not required to incorporate those symptoms into the hypothetical question.

### *2. Whether the ALJ erred by determining that failure to follow prescribed treatment was an indication of Freeman's non-disability*

Freeman argues the ALJ cannot rely on his refusal to follow prescribed treatment in finding non-disability. That is incorrect. The failure to follow prescribed treatment is an

---

incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [vocational expert] any purported defects in the hypothetical questions, a determination of non-disability based on such a defective question cannot stand." *Id*.

indication of non-disability. *See Quintanilla v. Colvin*, No. EP-12-CV-444, 2014 WL 1319298, at *6 (W.D. Tex. Mar. 27, 2014) (citing *Villa* 895 F.2d at 1024). The ALJ is entitled to resolve conflicts in the evidence and, after considering the record, conclude he could rely on objective medical facts to make his determination. *See Carey*, 230 F.3d at 135.

Specifically, Freeman objects to the "use of the electromyography ("EMG") study as a refusal to undergo treatment as the EMG is only a test" that Freeman took previously and is only "physical therapy accompanied by medication." Docket no. 22 at 5. Freeman continues that "[t]he EMG study becomes irrelevant when used in this context since a clear study and affirmation accompanied with a diagnosis for surgery coupled with longevity were clearly established in the Neurology Consultation notes." *Id*. at 4.

Here, Freeman was offered an EMG on January 21, 2010 for his loss of feeling symptoms, but never underwent the procedure. *See* docket no. 22, ex. 1. The ALJ determined this was a refusal to undergo treatment. The ALJ then relied on that refusal to undergo treatment as one of his many bases for his non-disability finding. *See* docket no. 6, ex. 2 at 14. This was not clearly erroneous as the ALJ relied on the objective facts to resolve conflicts in the evidence.

It also appears Freeman is trying to argue that the record shows he did have an EMG. However, the record shows that he never did an EMG after the January 21, 2010 neurology consultation. The January 21, 2010 neurology consultation shows that Freeman said he had an EMG performed in 2003 or 2004. The consultation then states that he was offered another EMG, which Freeman declined. *See* docket no. 22, ex. 1. The ALJ is only required to

consider the claimant's medical history from the onset date, which in this case means the medical history beginning in March 2012.  *See* docket no. 6, ex. 2 at 14, n. 22.

Therefore, the ALJ did not err in relying on Freeman's failure to follow prescribed treatment as an indication of non-disability.

### 3.  *Submission of new evidence to the Appeals Council and this Court*

Freeman submitted to Magistrate Judge Mathy a disability determination from the United States Department of Veteran's Affairs (VA) that he did not present to the ALJ as evidence. The VA disability determination was not provided to the ALJ, but was instead submitted to the Appeals Council after the ALJ's decision.  *See* docket no. 18 at 18; docket no. 17 at 12-14.

Judge Mathy found that Freeman failed to provide the VA disability determination to the ALJ, and therefore, the ALJ did not err by failing to consider evidence which was not presented to him.  *See* docket No. 18 at 18.  Freeman has the burden of proving his disability at the administrative hearing and the ALJ "has a duty to fully develop the facts, or else the decision is not supported by substantial evidence." *Leggett*, 67 F.3d 564.  Further, as Magistrate Judge Mathy pointed out, "a VA rating of total and permanent disability is not legally binding" on the Commissioner because the standards applied by the two agencies are different. Docket no. 18 at 18–19 (citing *Chambliss v. Massanari*, 269 F.3d 520, 522–23 (5th Cir. 2001)). "Because 'the regulations for disability status differ between the SSA and the VA, ALJs need not give 'great thought' to a VA disability determination.'" *Id*. (citing *Massanari*, 269 F.3d at 522).  Moreover, "although the ALJ did not consider the VA's disability determination, the ALJ considered the medical evidence of record which included

evidence relied on by the VA." *Id.* at 19. Freeman has not objected to this portion of the Magistrate Judge's finding, thus, reviewing this portion for clear error, the Court finds none with regard to the VA disability determination.

In this appeal, Freeman attached two additional pieces of evidence that were not before the ALJ. *See* docket no. 22, ex. 2. Although Freeman concedes the Court may not consider these pieces of evidence in determining whether the Commissioner's decision was supported by substantial evidence, he urges the Court to exercise its discretion under 42 U.S.C. § 405(g) to remand the case to the Commissioner to have the ALJ consider these reports. Docket no. 22 at 5–6. The two pieces of evidence are: (1) an Honor Guard Public letter from the Internet and (2) a definition of "furniture stripper" from the Internet. *See id*. The new evidence purports to establish the ALJ's determinations as internally inconsistent and contradictory. Namely, that the ALJ's conclusion at step five, that Freeman is able to work as a furniture stripper, contradicts the ALJ's finding at step four, that Freeman is not able to do his past relevant work, as his past relevant work was similar to a furniture stripper. *See id*. at 5.

A district court does not issue factual findings on new evidence, but is limited to determining whether to remand for the consideration of newly presented evidence. *See Haywood v. Sullivan*, 88 F.2d 1463 (5th Cir. 1989). In order to be considered, evidence submitted after the close of the administrative proceeding must be new and material; and good cause must be shown for the failure to incorporate such evidence into the record in a prior proceeding. *See Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir. 1983). To meet the materiality requirement, there must be a reasonable possibility that the new evidence would have changed the outcome of the ALJ's determination had it been before him. *Id.* (citing

*Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)).  In addition, new evidence must relate to the time period for which benefits were denied, and must not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.  *Haywood*, 888 F.2d at 1471 (citing *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)).  The Court declines to remand the case based on the new evidence submitted to this Court because it is ambiguous, conclusory, and unsupported by clinical data.  The new evidence is immaterial because it is not reasonably probable that an Internet definition of "furniture stripper" and information about the Honor Guard would have changed the ALJ's determination had the evidence been presented to him.[6]

The Court has reviewed all of the objected to portions of the second RNR *de novo* and finds that the ALJ's determination of non-disability and to deny DIB was supported by substantial evidence and applied the correct legal standards.  The Court has also reviewed the unobjected to portions of the second RNR and finds that they are neither clearly erroneous nor contrary to law.  Therefore, the Court accepts the second RNR.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge's Reports and Recommendations (docket nos. 12 and 18) are accepted, and the decision of the Commissioner is AFFIRMED.  Plaintiff Patrick Freeman's petition to have the Commissioner's decision reversed and/or remanded is DENIED.  Plaintiff's motion for default judgment (docket no. 8) and motion for reconsideration (docket no. 9) are DENIED.  The Clerk is instructed to enter judgment for the Defendant and close this case.

---

[6] To the extent Freeman's objection can be construed as broader and aimed at the ALJ's determination that he could work as a furniture stripper in the national economy, the ALJ based his decision on the vocational expert's testimony and other evidence in the record, so it is supported by substantial evidence.

It is so ORDERED.

SIGNED this 20th day of January, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE